# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **FLORIBERTO SEBASTIAN RODRIGUEZ,** | § § | |
| **Petitioner,** | § | |
| | § | **EP-26-CV-00292-DB** |
| **v.** | § § | |
| **PAMELA BONDI**, *Attorney General, et al.*, | § § | |
| **Respondents.** | § § | |

## <u>ORDER</u>

On January 30, 2026, Petitioner Floriberto Sebastian Rodriguez filed a "Verified Petition for Writ of Habeas Corpus," ECF No. 1. Petitioner is currently detained at an Immigration and Customs Enforcement ("ICE") facility in El Paso, Texas in the Western District of Texas. *Id.* at 6. He argues his detention is unlawful and asks the Court to order his release or a bond hearing. *Id.* at 16. On February 3, 2026, this Court ordered that Respondents shall not (1) remove or deport Petitioner from the United States, or (2) transfer Petitioner from any facility outside the boundaries of the El Paso Division of the Western District of Texas, until the Court orders otherwise or this case is closed. ECF No. 7 at 3.

Petitioner is a Mexican national who entered the United States in 2023.[1] ECF No. 11 at 2. Upon arrival, Petitioner presented himself at the port of entry in Nogales, Arizona where he applied for admission as an asylum seeker. *Id.*; ECF No. 11–2 at 3. In an exercise of its discretion pursuant to 8 U.S.C. § 1182(d)(5)(A), the Department of Homeland Security ("DHS") paroled Petitioner into the United States on humanitarian grounds. *Id.* That parole was authorized for one year. *Id.*

---

[1] Although the Petition identifies 2009 as the year of entry, it appears Petitioner was previously removed from the United States on two occasions. *See* ECF No. 11–2 at 3 (detailing Petitioner's immigration history).

On January 13, 2026, Petitioner was arrested by masked ICE agents in St. Paul, Minnesota. ECF No. 1 at 5. Petitioner asserts, among other things, that his detention violates his due process rights because, to date, he has not been afforded an individualized determination justifying his detention. *Id.* at 9–11.

Petitioner's case, as alleged, is materially indistinguishable from other cases in which this Court has found procedural due process violations. *See Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880 (W.D. Tex. Oct. 16, 2025). The Court previously noted it appears from the writ that it should be granted. *See* ECF No. 3 at 1–2. Nonetheless, this Court afforded Respondents three days to respond as to why it should not be, and directed that in so doing, "Respondents should avoid boilerplate arguments this Court has already rejected in one of many immigration habeas cases to date. Absent any new authority, Respondents can safely assume the Court's position on the law has not changed and explain why the facts of Petitioner's case warrant a different outcome." ECF No. 3 at 2.

In attempt to bolster their previously rejected due process argument, Respondents now cite to *Leng May Ma v. Barber*, 357 U.S. 185 (1958) and *Kaplan v. Tod*, 267 U.S. 228 (1925). In those cases, the Supreme Court applied what is known as the "entry fiction" to cabin the statutory rights of noncitizens, who, like Petitioner, were paroled into the United States for the duration of their immigration proceedings. Although the Court appreciates Respondents' effort to introduce new authority, rather than regurgitate the same template arguments, this Court has already explicitly rejected Respondents' assertion that noncitizens paroled into the country on humanitarian grounds are entitled to only those protections afforded to them by statute. *See Hassen v. Noem*, No. EP-26-CV-00048-DB, at 3 (W.D. Tex. Feb. 9, 2026). Additionally, although the Supreme Court's

decisions in *Leng May Ma* and *Kaplan* "relied on due process considerations," those cases were ultimately ones of statutory construction. ECF No. 11 at 7 (citation omitted). As such, the Court declines Respondents' invitation to read in a procedural due process holding where none exists.

The Court also finds it important to note that had Respondents meaningfully engaged with the due process case law undergirding *Leng May Ma* and *Kaplan*, they would have realized those cases are materially distinguishable from the case at hand for the same reasons this Court previously distinguished *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). *See Vieira*, 2025 WL 2937880, at *10 (noting several critical distinctions between petitioner's case and *Thuraissigiam*, including, as is relevant here, Thuraissigiam was apprehended 25 yards into U.S. territory and detained from that point onwards); *see also Nishimura Ekiu v. United States*, 142 U.S. 651 (1892) (involving a Japanese national who was denied permission to land and placed in the custody of a local mission pending a determination as to her admissibility); *United States v. Ju Toy*, 198 U.S. 253 (1905) (involving a Chinese national denied permission to land and held at the San Francisco port of entry); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) (involving a foreign national who was refused entry upon arrival and detained at Ellis Island pending disposition of his case). Unlike the noncitizens in *Nishimura Ekiu*, *Ju Toy*, and *Mezei*, Petitioner was released from DHS custody after presenting himself at the port of entry. He established meaningful ties to this country in ways one cannot do from the confines of a holding cell or government-designated boarding house. As such, "[t]o claim that Petitioner was never really 'here' [would require] a much greater sleight of hand than is provided for in [*Nishimura Ekiu*, *Ju Toy*, and *Mezei*]." *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *6 (D. Mass. Nov. 7, 2025). The Court reiterates its original holding that noncitizens who have "established

connections" in the United States by virtue of living in the country for a substantial period acquire a liberty interest in being free from government detention without due process of law. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Because the Government released Petitioner and permitted him to live in the United States for over three years, they cannot revoke that liberty without an individualized determination of the need to do so.

As for Respondents' remaining arguments, the Court has already rejected them. *Compare* ECF No. 11, 3–6 *with, e.g., Rodriguez Cortina v. De Anda-Ybarra*, No. EP-25-CV-00523-DB, 2025 WL 3218682 (W.D. Tex. Nov. 18, 2025); *Zafra v. Noem*, No. EP-25-CV-00541-DB, 2025 WL 3239526 (W.D. Tex. Nov. 20, 2025); *Chinchilla v. De Anda-Ybarra*, No. EP-25-CV-00548-DB, 2025 WL 3268459 (W.D. Tex. Nov. 24, 2025); *Escobar – Arauz v. Noem*, No. EP-25-CV-00619-DB, 2025 WL 3543648 (W.D. Tex. Dec. 10, 2025); *Espinoza v. Noem*, No. EP-25-CV-00618-DB, 2025 WL 3543646 (W.D. Tex. Dec. 10, 2025); *Morales-Quirino v. De Anda-Ybarra*, No. EP-26-00323-DB, (W.D. Tex. Feb. 17, 2026).

Accordingly, after careful consideration of the undisputed facts in this case as well as the legal conclusions made in *Vieira* and this Court's subsequent immigration habeas cases brought by petitioners subject to mandatory detention under the Government's new interpretation of 8 U.S.C. § 1225(b),[2] **IT IS HEREBY ORDERED** Petitioner's "Verified Petition for Writ of Habeas

---

[2] This Court acknowledges the Fifth Circuit's precedential decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. 2026) issued on February 6, 2026, determining Respondents' statutory interpretation of Section 1225(b)'s mandatory detention provision is correct. However, *Buenrosto-Mendez* does not change this case's outcome on procedural due process grounds. In its original due process analysis, this Court accepted without deciding Respondents' interpretation was true. *See, e.g., Zafra v. Noem*, No. EP-25-CV-00541-DB, 2025 WL 3239526 (W.D. Tex. Nov. 20, 2025) ("The parties argue about Respondents' novel interpretation regarding mandatory detention under Section 1225(b) and whether Petitioner falls within it. Even assuming without deciding Respondent's reading is correct, the Court will not

Corpus and Complaint for Declaratory Relief," ECF No. 1., is **GRANTED IN PART** on procedural due process grounds.

**IT IS FURTHER ORDERED** Respondents **SHALL** (1) provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk for Petitioner's continued detention; **OR** (2) release Petitioner from custody, under reasonable conditions of supervision, during the pendency of their removal proceedings **no later than March 2, 2026.**[3]

**IT IS FURTHER ORDERED** Respondents **SHALL FILE** an advisory either (1) informing the Court, in detail, of the reasons for the immigration judge's bond hearing decision held in accordance with the preceding line order, or (2) informing the Court of Petitioner's release **no later than March 6, 2026.**

**IT IS FURTHER ORDERED** that in the event Petitioner is released from custody, Respondents **SHALL RETURN** all personal property in their custody to Petitioner upon release. Such property includes, but is not limited to, identification documents.

---

address these arguments because the Court finds Petitioner is entitled to procedural due process in his as-applied challenge.").

[3] Respondents are forewarned that a proceeding where an immigration judge denies bond for lack of jurisdiction does not satisfy Respondents' obligation to provide a bond hearing in compliance with the instant Order. In such event, release from custody is *required*.

IT IS FINALLY ORDERED that, following Petitioner's bond hearing or release, the parties SHALL CONFER and FILE a notice informing the Court whether any matters remain to be resolved in this case **no later than March 13, 2026.**

SIGNED this **25th** day of **February 2026**.

THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE